Charles A. Loreto, J.
This suit has been instituted by one Harry Sadow individually and as president of the Public Awareness Society, a civic association. The defendants named are the Long Island Rail Road Company and the Brotherhood of Railroad Trainmen. In the haste to institute this proceeding, the railroad has been misnamed and an amendment to recite its correct name has been allowed. The union not having been properly named or served, on its special appearance, a dismissal as to it has been granted.
In the prayer for relief recited in the complaint, the plaintiff demands a permanent injunction against the defendants compelling them to formulate plans and procedures by and through which the operation of the Long Island Railroad shall be assured at all times and under all conditions regardless of and notwithstanding labor strikes by its employees.
By order to show cause, served together with the summons and complaint, the plaintiff seeks the writ of mandamus of this court directing the railroad to provide transportation for the public over its tracks notwithstanding the existence of the strike of its employees and restraining the union from interfering with such operation and also directing the parties to make arrangements and formulate plans so that future strikes will not completely curtail transportation. The plaintiff asserts that he has brought this suit because of inconvenience, hardship and vexation caused to the public because of the obstinacy and selfishness of both the railroad company and the striking employees in not settling their differences.
At the outset the court desires to state that it is fully aware of the serious inconvenience, hardship and harm that the cessation of the operation of the Long Island Railroad is inflict *943 ing upon the public generally. It may be that both defendants may also be suffering some damage while it continues, although this is denied by the plaintiff. Nonetheless, the court sympathizes with all who suffer because of the continuance of this strike and is most favorably disposed to do all within its power to contribute to bringing it to a just termination as expeditiously as possible.
The primary question is whether the court may entertain this suit at the instance of the plaintiff. There is no doubt that the public interest is involved and that in a way the railroad is charged with a public trust. The mere presence of these factors does not entitle any member of the public to institute suit and thereby to invoke the judicial machinery to pass upon the problem arising by reason of the strike.
The plaintiff places reliance upon the decision of People v. New York Cent. & Hudson Riv. R. R. Co., decided (28 Hun 543) by the Appellate Division, First Department, in 1883. That case is clearly distinguishable and is not authority permitting this suit. Its title indicates that it was brought not in the name of an individual or a group of private citizens but in the name of the People of the State of New York on the petition of the Attorney-General. It points to the earlier case of People ex rel. Ohlen v. N. Y., Lake Erie & Western R. R. Co. (22 Hun 533) wherein it was held on an application by an individual (whose property the railroad refused to transport) for a writ of alternative mandamus to require it to provide transportation that ‘ ‘ His remedy is by an action to recover damages, and not by the intervention of the writ of mandamus ’ ’ (p. 540).
The facts in that case too were different from those at bar. In that case there was no strike by the employees of the railroad. The court states in its opinion: “If it had been shown that a ‘ strike ’ of their skilled laborers had been caused or compelled by some illegal combination or organized body, which held an unlawful control of their actions, and sought through them to enforce its will upon the respondents, and that the respondents, in resisting such unlawful efforts, had refused to obey unjust and illegal dictation, and had used all the means in their power to employ other men in sufficient numbers to do the work, and that the refusal and neglect complained of had grown out of such a state of facts, a very different case for the exercise of the discretion of the court, as well as of the attorney-general, would have been presented ” (p. 558) (italics supplied). There is no claim or charge here that the union is exercising an unlawful control over the striking employees or that the conduct of the railroad is in violation of any law.
*944 Since the complaint fails to allege an action under the common law and there is lacking a statutory basis for it, the court cannot entertain this suit.
Unfortunately mediation has proved ineffective, the union has refused to arbitrate and there is lacking a basis for the court to adjudicate. Meanwhile the cessation of the operation of this railroad continues to cause great inconvenience, vexation, discomfort and expenditures not recoverable to many persons. If, as is claimed, the principals to the strike stubbornly and unreasonably persist in refusing to adjust their differences, this may well present the type of situation wherein an aroused citizenry no longer will tolerate a “ Public be damned ” attitude and will demand appropriate legislation which will provide for compulsory arbitration and authorize the court to act.
In view of the foregoing the plaintiff’s application is denied and the complaint dismissed.